IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MATTHEW WHITTEN, | |
| Plaintiff, | 8:15-CV-96 |
| vs. | |
| CITY OF OMAHA, et al., | MEMORANDUM AND ORDER |
| Defendants. | |

This matter is before the Court on the defendants' motion to dismiss for failure to state a claim (filing 39) and several associated motions (filings 49, 50, and 53) filed by the plaintiff. The Court will grant the defendants' motion in part and deny it in part, and will deny the plaintiff's motions entirely.

BACKGROUND

The plaintiff, Matthew Whitten, is suing the City of Omaha and several Omaha police officers under 42 U.S.C. § 1983 for claims arising from his arrest on July 11, 2014. Filing 28 at 2. Whitten's operative complaint alleges that he was contacted outside his home and questioned by two of the defendants, officers John Martin and Matthew Backora,[1] about terroristic threats he had been said to have made. Filing 28 at 2. The affidavit Martin later submitted in applying for a search warrant provides some background: it had been reported by a debt collector for Wells Fargo Bank that during a call with Whitten, Whitten had made threats, including "You tell me when, I'll get the gun, rob these places and pull the trigger" and "I have a friend and he'll go along, between us we can take out these four communities." Filing 41-1 at 2. But Whitten alleges that when he was contacted, he told the officers that he did not intend to threaten anyone, did not plan any robberies, and did not have any weapons. Filing 28 at 2. Martin's affidavit is consistent with that account. *Compare* filing 28 at 2 *with* filing 41-1 at 2.

The officers asked Whitten if he would consent to a search of his home, but he refused. Filing 28 at 3. Martin spoke to his superior Sergeant Sean

---

[1] Martin's affidavit in support of his application for a search warrant says that his companion when he contacted Whitten was actually an Officer Seymour, who is not named in the complaint. *Compare* filing 28 *with* filing 41-1 at 2. But the discrepancy is not relevant at this point.

Sheridan (who is also a defendant), and then arrested Whitten. Martin applied for, and obtained, a search warrant from a county court judge. Filing 41-1 at 1-5. Because Whitten's precise allegations in this regard will prove to be important, the Court sets them forth at length:

> Defendant Martin, lacked probable cause to believe that the Plaintiff had made any statements to another person or persons with a) the intent to terrorize another or b) with the intent of causing evacuation of a building, place of assembly or a facility of public transportation or c) in reckless disregard of the risk of causing such terror or evacuation.
>
> Defendant Martin applied for and was granted a search warrant to search Plaintiff's home for Firearms, Ammunition, Explosives, and Items of Venue.
>
> Nothing in the application for the search warrant establishes even a remote possibility that contraband or evidence of criminal activity would be found in the premises.
>
> The affidavit in support of the search warrant was so lacking in the indicia of probable cause as to render official belief in its existence entirely unreasonable.
>
> A reasonably well-trained officer in Defendant Martin's position would have known that the application for the search warrant failed to establish probable cause and that he should not have applied for nor executed the warrant.
>
> On July 11, 2014, Defendants conspired and agreed amongst themselves to illegally search the home of Plaintiff. In furtherance of this conspiracy, Defendants executed a search warrant and knew or should have known that the totality of the circumstances alleged in the warrant was insufficient for a finding of probable cause.

Filing 28 at 3.

The search warrant was executed, and the return and inventory states, as relevant, that the search revealed a container that tested positive for methamphetamine and a "Black Omaha Police Wallet with OPD Badge inside." Filing 41-1 at 6. Whitten alleges that he was not charged with terroristic threats, but was charged with other offenses arising out of what was discovered during the search. Filing 28 at 4-5. He spent 21 days in jail. Filing 28 at 4. But eventually, Whitten alleges, his motion to suppress was sustained by a state district court, and the case against him was dismissed on the prosecution's motion. Filing 28 at 5.

Whitten is suing Martin, Backora, and Sheridan, in their official and individual capacities, for unlawful arrest, an unreasonable search, and conspiracy to violate his constitutional rights. Filing 28 at 8. And he is suing the City based on policies and customs that he says caused his civil rights to be violated. Filing 28 at 10-11; *see Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91 (1978). The defendants move, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss his claims for (1) unreasonable search, and (2) unreasonable seizure *after* the search warrant was executed. Filing 39. Whitten has (twice) moved, filings 49 and 53, to strike "all false, immaterial, impertinent, or defamatory representations" from the defendants' brief, and (twice) moved for sanctions pursuant to Fed. R. Civ. P. 11, filings 50 and 53.

## STANDARD OF REVIEW

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* While the Court must accept as true all facts pleaded by the nonmoving party and grant all reasonable inferences from the pleadings in favor of the nonmoving party, *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012), a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. *Iqbal*, 556 U.S. at 678. Determining whether a complaint states a plausible claim for relief will require the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

## DISCUSSION

The defendants contend that Whitten's unlawful search claim should be dismissed because reliance on the search warrant was objectively reasonable; and that his unlawful seizure claim should be dismissed to the extent that it relies on his detention after the search, because the search revealed evidence sufficient to warrant charging him with a crime. *See* filing 40. But the defendants' arguments rely on the affidavit and application for search warrant, the warrant itself, and the return and inventory from the search—materials that were not attached to the complaint. Whitten's primary response to the defendants' motion to dismiss is that the defendants are impermissibly trying to submit evidence in support of a Rule 12(b)(6) motion. Filing 48 at 2. So, before reaching the merits of the parties' motions, the Court must consider the scope of the record.

SCOPE OF RECORD

When deciding a motion to dismiss under Rule 12(b)(6), the Court is normally limited to considering the facts alleged in the complaint. If the Court considers matters outside the pleadings, the motion to dismiss must be converted to one for summary judgment. Rule 12(d). However, the Court may consider exhibits attached to the complaint and materials that are necessarily embraced by the pleadings without converting the motion. *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003). Documents necessarily embraced by the pleadings include those whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading. *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012). Some materials that are part of the public record or do not contradict the complaint may also be considered. *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007).

The plaintiff must supply any documents upon which its complaint relies, and if the plaintiff does not provide such documents the defendant is free to do so. *BJC Health Sys. v. Columbia Cas. Co.*, 348 F.3d 685, 688 (8th Cir. 2003). But most courts view "matters outside the pleading" as being any written or oral evidence in support of or in opposition to the pleading that provides some substantiation for, and does not merely reiterate, what is said in the pleadings. *Gorog v. Best Buy Co.*, 760 F.3d 787, 791 (8th Cir. 2014); *BJC Health Sys.*, 348 F.3d at 687.

The defendants contend that the evidence they submitted in support of their motion—the affidavit and application for search warrant, and the return and inventory from execution of the warrant—are both embraced by the complaint and public records. The Court agrees that the affidavit and application for search warrant is a matter embraced by the complaint: the allegations from Whitten's complaint, set forth above, expressly premise his unlawful search claim on the facts known to Martin and set forth in his affidavit. In other words, Whitten is not alleging that Martin lied in the affidavit, or omitted relevant facts from it—instead, he is simply alleging that the affidavit was insufficient to support issuance of the warrant, and any reasonable officer would have known it. So, the affidavit is necessarily embraced by the pleadings, and may be considered.

The Court has more difficulty, however, concluding that the return and inventory on the warrant is embraced by the pleadings. The complaint does not mention that document. *See Shqeirat v. U.S. Airways Grp., Inc.*, 515 F. Supp. 2d 984, 992 (D. Minn. 2007). And the Court is unpersuaded that the return and inventory is the sort of "public record" that should be considered on a motion to dismiss where it is offered, not for the fact of its filing, but for the truth of the facts asserted in it by the police officer who executed the

- 4 -

warrant. *See* *Kushner v. Beverly Enterprises, Inc.*, 317 F.3d 820, 831-32 (8th Cir. 2003) (district court did not abuse discretion by refusing to consider alleged matters of "public record" offered for the truth of the matters asserted in them); *see also*, *Markewich ex rel. Medtronic, Inc. v. Collins*, 622 F. Supp. 2d 802, 806-07 (D. Minn. 2009); *Shqeirat*, 515 F. Supp. 2d at 992; *Cohen v. Nw. Growth Corp.*, 385 F. Supp. 2d 935, 965-66 (D.S.D. 2005); *cf.* *Sorace v. United States*, 788 F.3d 758, 767 (8th Cir. 2015).

A rule permitting the testimony of one side's witnesses to be considered as substantive evidence on a motion to dismiss, simply because those witnesses were able to file their accounts as "public records," would amount to unilateral disarmament in many kinds of civil litigation. The Court does not believe that is consistent with Fed. R. Civ. P. 12(b), or what is intended by permitting public records to be considered on a motion to dismiss. As the First Circuit has persuasively explained, in rejecting "the expansive view that any document held in a public repository falls within the category of extrinsic materials that may be considered":

> It is true that, when reviewing a motion to dismiss for failure to state a claim, a court may consider matters of public record. But there are limits to that license. Many documents in the possession of public agencies simply lack any indicia of reliability whatsoever. In that regard, they are unlike official records, such as birth or death certificates and other similar records of vital statistics. . . . Rather, the phrase "official public records" when used in the present context, appears limited, or nearly so, to documents or facts subject to judicial notice . . . .

*Freeman v. Town of Hudson*, 714 F.3d 29, 36 (1st Cir. 2013) (citation and quotation omitted.) The Court agrees. And this case presents a clear example of the problem: the key fact contained in the return and inventory on the warrant executed at Whitten's home are that police allegedly found a "Plastic Rubbermaid container with white powder - tested positive for Methamphetamine, .45 grams." Filing 41-1 at 6. Found where? Tested by whom? It cannot be consistent with Rule 12(b)(6) to permit a fact as important as the alleged presence of illegal drugs in the plaintiff's home to be slipped into evidence on a motion to dismiss, without foundation or an opportunity for discovery, in the Trojan horse of a "public record."

The Court finds, therefore, that while the return and inventory on the warrant executed at Whitten's home may technically be a "public record," the facts asserted in that document should not be considered for their truth when deciding this motion to dismiss.

UNLAWFUL SEARCH CLAIM

As detailed above, Whitten alleges that his home was searched unlawfully because probable cause to issue the warrant was lacking. The initial question is whether the individual-capacity defendants are entitled to qualified immunity.[2]

Qualified immunity shields public officials performing discretionary functions from liability for conduct that does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Parker v. Chard*, 777 F.3d 977, 979 (8th Cir. 2015); *see*, *Messerschmidt*, 132 S. Ct. at 1244; *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly, and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. *Pearson*, 555 U.S. at 231. It gives officials breathing room to make reasonable but mistaken judgments about open legal questions and protects all but the plainly incompetent or those who knowingly violate the law. *Parker*, 777 F.3d at 979-80.

In determining whether a government official is entitled to qualified immunity, the Court asks (1) whether the facts alleged establish a violation of a constitutional or statutory right and (2) whether that right was clearly established at the time of the alleged violation, such that a reasonable official would have known that his actions were unlawful. *Johnson v. Phillips*, 664 F.3d 232, 236 (8th Cir. 2011); *see Parker*, 777 F.3d at 980. Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken. *Messerschmidt*, 132 S. Ct. at 1245; *Pearson*, 555 U.S. at 244. The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact. *Messerschmidt*, 132 S. Ct. at 1245.

For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is

---

[2] The defendants' motion and brief do not articulate a qualified immunity defense as clearly as they could have. But the defendants' extensive reliance on *Messerschmidt v. Millender*, 132 S. Ct. 1235 (2012), which is a qualified immunity case, undoubtedly implicates that doctrine. Filing 40 at 4-7. Given that, and the Eighth Circuit's emphasis on the Court's obligation to rule on questions of qualified immunity, the Court addresses the issue. *See*, *Payne v. Britten*, 749 F.3d 697, 700-01 (8th Cir. 2014); *Mitra v. Curators of Univ. of Mo.*, 322 F. App'x 467, 468 n.2 (8th Cir. 2009); *see also Story v. Foote*, 782 F.3d 968, 969-70 (8th Cir. 2015).

doing violates that right. *Parker*, 777 F.3d at 980. Clearly established law is not defined at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced. *Id.*; s*ee Seymour v. City of Des Moines*, 519 F.3d 790, 798 (8th Cir. 2008).

The Court assumes, without deciding, that Whitten has sufficiently alleged the violation of a constitutional right. It would not be a stretch to conclude that probable cause to issue the warrant was lacking—a state district judge reached that conclusion, and the affidavit is certainly thin. But even assuming that Whitten has alleged a violation of his constitutional right, the contours of that right were not clearly established.

The Court evaluates the defense of qualified immunity from the perspective of a reasonable police officer based on facts available to the officer at the time of the alleged constitutional violation. *Parker*, 777 F.3d at 980. Thus, if an officer acts in a manner about which officers of reasonable competence could disagree, the officer should be immune from liability. *Johnson v. Schneiderheinz*, 102 F.3d 340, 341 (8th Cir. 1996). "The dispositive question is whether the violative nature of *particular* conduct is clearly established. *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quotation omitted). Such specificity is especially important in the Fourth Amendment context, where it is sometimes difficult for an officer to determine how the relevant legal doctrine will apply to the factual situation the officer confronts. *Id.* For the law to be "clearly established," it is not necessary to have a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate. *Parker*, 777 F.3d at 980.

And here, the question is not beyond debate. Whitten has not directed the Court to any case from the U.S. Supreme Court, the Eighth Circuit, or state or federal courts in Nebraska, that settles the question. Nor has the Court's research discovered one. To the extent that caselaw can be found anywhere that addresses even somewhat similar circumstances, those cases suggest that a search can be justified on the basis of threats, because it is reasonable to assume that threats are accompanied by a means of carrying them out. *See, United States v. Meeks*, 166 F. App'x 297, 299 (9th Cir. 2006); *State v. Eastwood*, 850 A.2d 234, 242 (Conn. App. Ct. 2004); *see also, Renneke v. Florence Cty., Wis.*, 594 F. App'x 878, 881 (7th Cir. 2014), *cert. dismissed*, 135 S. Ct. 1708 (2015); *United States v. Simmons*, 441 F. App'x 754, 755 (11th Cir. 2011); *Mills v. State*, No. 62987, 2013 WL 7158624, at *1 (Nev. Dec. 13, 2013); *cf., Walczyk v. Rio*, 496 F.3d 139, 159-60 (2d Cir. 2007); *United States v. Hill*, No. 09-0446, 2010 WL 2038995, at *2 (D. Md. May 20, 2010), *aff'd*, 471 F. App'x 143 (4th Cir. 2012); *State v. Amundson*, 712 N.W.2d 560, 564-65

(Minn. Ct. App. 2006); *but cf. State v. Walczyk*, 818 A.2d 868, 875-76 (Conn. App. Ct. 2003), *disagreed with by Walczyk v. Rio*, 496 F.3d at 159.

And, as the *Messerschmidt* Court explained, "[w]here the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner." 132 S. Ct. at 1245. While there is an exception allowing suit when it is obvious that no reasonably competent officer would have concluded that a warrant should issue, "the threshold for establishing this exception is a high one, and it should be." *Id.* "It is a sound presumption that the magistrate is more qualified than the police officer to make a probable cause determination, and it goes without saying that where a magistrate acts mistakenly in issuing a warrant but within the range of professional competence of a magistrate, the officer who requested the warrant cannot be held liable." *Malley v. Briggs*, 475 U.S. 335, 346 n.9; *accord Messerschmidt*, 132 S. Ct. at 1245.

Given the foregoing caselaw, it would not have been "entirely unreasonable" for an officer to believe, in the particular circumstances of this case, that there was probable cause for a search. *See Messerschmidt*, 132 S. Ct. at 1249. The officers' judgment that the warrant was supported by probable cause may have been mistaken, but it was not plainly incompetent. *Id.* And "[t]he fact that the officers sought and obtained approval of the warrant application from a superior . . . before submitting it to the magistrate provides further support for the conclusion that an officer could reasonably have believed that the scope of the warrant was supported by probable cause." *Id.* So, "it cannot be said that no officer of reasonable competence would have requested the warrant." *Id.* (quotation omitted). As the *Messerschmidt* Court concluded:

> The question in this case is not whether the magistrate erred in believing there was sufficient probable cause to support the scope of the warrant he issued. It is instead whether the magistrate so obviously erred that any reasonable officer would have recognized the error. The occasions on which this standard will be met may be rare, but so too are the circumstances in which it will be appropriate to impose personal liability on a lay officer in the face of judicial approval of his actions. Even if the warrant in this case were invalid, it was not so obviously lacking in probable cause that the officers can be considered plainly incompetent for concluding otherwise.

*Id.* at 1250 (quotation omitted). The same is true here.

Accordingly, the Court finds that the individual defendants are entitled to qualified immunity on Whitten's unlawful search claim.[3] The Court will grant the defendants' motion to dismiss on that point.[4]

UNLAWFUL DETENTION

The defendants also ask the Court to dismiss Whitten's unlawful detention claim to the extent it is based on his detention after the search. Filing 39 at 1. That is, at this point, the defendants are not challenging Whitten's claim that he was unlawfully arrested in the first place. But they are claiming that after the search, it was lawful to keep Whitten, because of the contraband that the search revealed. *See* filing 40 at 7-8.

As explained above, the Court does not believe that the return and inventory from the search is properly placed before the Court on a motion to dismiss. So, the defendants' argument initially fails for lack of proof. But even if the Court considered the return and inventory, the result would be the same. The return simply establishes that contraband was found in the residence. Filing 41-1 at 6. But Martin's affidavit establishes that the dwelling is a two-story single-family house with a two-car garage, owned by Whitten's mother. Filing 41-1 at 1. And two cars were parked there: one car was registered to Whitten, and the other to a couple (also named Whitten) whose exact relationship to the plaintiff is unclear. Filing 41-1 at 1.

In other words, while it is clear that Whitten lived in the house, the record is at best ambiguous about who else might have been there, and where the contraband was discovered. Without some clarity on those points, the evidence—even if considered—does not establish as a matter of law whether it could have been considered reasonable to continue detaining Whitten based

---

[3] The Court does not understand the defendants' motion to dismiss to be directed at Whitten's separately pled *Monell* claim. In any event, the City does not have qualified immunity. *See Brandon v. Holt*, 469 U.S. 464, 472-73 (1985). And as suggested above, it is at least plausible, based on the allegations in Whitten's complaint, that a City policy or custom resulted in a constitutional violation.

[4] Whitten also suggests that because his claims survived initial review pursuant to 28 U.S.C. § 1915A, *see* filing 6, it is the "law of the case" that his complaint states claims for relief, filing 48 at 3. That is incorrect: in the absence of a final judgment,

> any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b).

on the results of the search.[5] The Court will, at least at this stage of the proceedings, deny the defendants' motion to dismiss this claim.

MOTIONS TO STRIKE AND MOTION FOR SANCTIONS

Whitten responded to the defendants' brief in support of their motion to dismiss (filing 40), not only with a brief in opposition (filing 48), but with a motion to strike several statements in the defendants' brief that Whitten argues are unsupported by the record. Filing 49. Later, Whitten filed a renewed motion to strike (filing 53) advancing the same arguments. Whitten characterizes the defendants' brief as "an attempt to advance an obtuse, one-sided interpretation of the events which are the subject of the Plaintiff's lawsuit."[6] Filing 49 at 1.

But striking a party's filings is an extreme, disfavored measure. *See Stanbury Law Firm v. I.R.S.*, 221 F.3d 1059, 1063 (8th Cir. 2000). Motions to strike are often considered "time wasters," and should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy. *Infogroup, Inc. v. DatabaseLLC*, 95 F. Supp. 3d 1170, 1194 (D. Neb. 2015); *Lane v. Page*, 272 F.R.D. 581, 591-94 (D.N.M. 2011) (citing 5C C. Wright and A. Miller, *Fed. Prac. & Proc. Civ.* § 1382 (3d ed. 2004)); *see Lunsford v. United States*, 418 F. Supp. 1045, 1051-52 (D.S.D. 1976), *aff'd*, 570 F.2d 221 (8th Cir. 1977).

Whitten's motion to strike raises what may be fairly described as semantic disagreements with the defendants' characterizations of the evidence. For instance, the defendants refer to Whitten's threat to "take out these four communities" as threatening a "mass shooting incident." Filing 40 at 2. Whitten complains that the phrase "mass shooting incident" is not found in the evidence. Filing 49 at 2. The defendants describe Whitten as refusing "further cooperation" with law enforcement after being questioned, because he did not consent to a search of his residence. Filing 40 at 6. Whitten complains that Martin's affidavit does not say Whitten was "uncooperative." Filing 49 at 2.

---

[5] It is even more unclear for this claim than for the unlawful search claim whether the defendants intended to raise a qualified immunity defense. But, to the extent it might have been implied, the Court finds that the record *at this point* does not establish qualified immunity. *See Payne*, 749 F.3d at 701-02. In other words, the facts as alleged plausibly state a claim for violation of a clearly established right to be free from unlawful detention. *See id.* at 702.

[6] That is actually a reasonably apt (if uncharitable) description of a party's role in an adversarial court system. The defendants' brief can be described as "one-sided" because they are, literally, one side of the case. It is Whitten's job to present the other side.

None of that merits being stricken. The Court declines Whitten's invitation to take a blue pencil to the defendants' brief. *See Infogroup*, 95 F. Supp. 3d at 1195. The Court recognizes that Whitten is proceeding *pro se*, and will give him some leeway because of that. *See Mousel v. Knutson Mortgage Corp.*, 823 F. Supp. 658, 664 (D. Minn. 1993). But the Court takes this opportunity to advise Whitten that if he believes the defendants are misrepresenting the record in their arguments, the best practice is simply to point the alleged misrepresentations out to the Court in his response brief. It doesn't help anyone when one motion metastasizes into two or three motions.

Much of the same reasoning applies to Whitten's motion for sanctions under Rule 11(c) (filing 50), and renewed motion for sanctions (filing 53), which are based on the defendants' argument that the search of Whitten's home discovered a "stolen or forged Omaha Police Department law enforcement badge." *See* filing 40 at 8. Whitten argues that sanctions are warranted because the return and inventory from the search makes no reference to the badge being "stolen or forged." Filing 50 at 1.

In determining whether a violation of Rule 11 has occurred, the Court must apply an "objective reasonableness" standard. *Miller v. Bittner*, 985 F.2d 935, 938 (8th Cir. 1993). That is, the Court must determine whether a reasonable and competent attorney would believe in the merit of an argument. *Coonts v. Potts*, 316 F.3d 745, 753 (8th Cir. 2003). Rule 11 sanctions may be warranted when a pleading is presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; contains allegations or factual contentions that lack evidentiary support; or contains denials of factual contentions that are not warranted on the evidence. *Clark v. United Parcel Serv., Inc.*, 460 F.3d 1004, 1008 (8th Cir. 2006).

But those circumstances are plainly not present here.[7] The return and inventory state that a "Black Omaha Police Wallet with OPD Badge inside" was found in Whitten's home. Filing 41-1 at 6. Whitten does not claim to be a police officer, and in Omaha, it is "unlawful for any unauthorized person to have in his or her possession or upon his or her person either an official police badge of the city or any imitation thereof." Omaha, Neb. Code § 25-3 (1980). A reasonable and competent attorney could believe that Whitten's possession of what appeared to be an Omaha Police Department badge supported an argument that the badge was stolen or forged.

---

[7] The Court also notes that Rule 11(c)(1) and (2) set forth a "safe harbor" procedure that does not appear to have been followed here. *See Gordon v. Unifund CCR Partners*, 345 F.3d 1028, 1030 (8th Cir. 2003).

- 11 -

Therefore, the Court will deny Whitten's motions to strike, and his motions for Rule 11 sanctions.

IT IS ORDERED:

1.    The defendants' motion to dismiss for failure to state a claim (filing 39) is granted in part and denied in part, as set forth above.

2.    Whitten's unlawful search claim against the individual-capacity defendants is dismissed.

3.    Whitten's motion to strike (filing 49) is denied.

4.    Whitten's motion for sanctions (filing 50) is denied.

5.    Whitten's renewed motion to strike and for sanctions (filing 53) is denied.

6.    The defendants' answer to Whitten's remaining claims shall be filed on or before August 26, 2016.

Dated this 9th day of August, 2016.

BY THE COURT:

John M. Gerrard
United States District Judge